IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SANDRA W. KIEFER, ) | Civil Action No. 3:10-1220-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB on December 12, 2005, alleging disability as of December 9, 2005.[1] Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 12, 2008, at which Plaintiff appeared and testified. The ALJ issued a decision denying benefits on April 23, 2008. The ALJ found that Plaintiff was not disabled because she had the residual functional capacity ("RFC") to perform her past relevant work as a receptionist.

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to December 28, 2004.

Plaintiff was forty-two years old at the time of the ALJ's decision. She has a high school education with one year of college studies and past relevant work as a receptionist. Tr. 19, 23. Plaintiff alleges disability due to degenerative disc disease. Tr. 112.

The ALJ found (Tr. 13-19):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since December 28, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.  The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.l520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b). The claimant is able to sit/stand/walk six hours each in an eight-hour workday and is able to occasionally lift 20 pounds and frequently lift ten pounds. She is limited to occasional stooping or crawling.

6.  The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 28, 2004 through the date of this decision (20 CFR 404.1520(f)).

On March 13, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-3). Plaintiff filed this action on May 12, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. § 423 pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

An MRI of Plaintiff's lumbar spine on February 4, 2004, was largely unremarkable other than a mild non-compressive annular bulge at L5-S1. Tr. 161. On March 30, 2004, an MRI of Plaintiff's cervical spine revealed mild degenerative changes in her upper cervical spine with mild disc/osteophyte protrusions at C3-4 and C4-5 resulting in mild formaminal stenosis except at C3-4 where there was moderate stenosis. Tr. 163.

From January 2004 to December 2004 (prior to Plaintiff's alleged onset date), Dr. George Robert Richardson, III of the Southeastern Spine Institute treated Plaintiff's complaints of face, neck, and hip pain. Dr. Richardson noted lumbar paraspinal tenderness and spasm, but no long tract signs or sensory deficits. Pain medication, muscle relaxers, physical therapy, and epidural injections were prescribed. See Tr. 292-303. On one occasion (January 21, 2004), positive straight-leg raise testing and limited lumbar range of motion secondary to pain were noted. Tr. 303.

On December 22, 2004, Dr. Richardson treated Plaintiff for complaints of neck and low back pain. Plaintiff reported she was overall much better after an epidural injection. Dr. Richardson noted

3

that Plaintiff had lumbar paraspinal tenderness to spasm, but there were no motor or sensory deficits. Tr. 293. From December 2004 until October 2007, Dr. Richardson administered a number of epidural steroid injections to Plaintiff's sacrum, lumbar spine, and cervical spine. Tr. 189, 192-193, 195, 197, 271-278, 321-323.

Dr. Theodore Pappas (a family physician) noted that Plaintiff was in no distress, had a supple neck, and had normal neurological findings on January 6, 2005. Plaintiff reported she had been in the hospital, was diagnosed with viral meningitis and encephalitis, and she had some episodes of confusion in the hospital that resolved spontaneously. Dr. Pappas wrote that he was trying to find the final hospital report. Tr. 178. Dr. Richardson noted in January 2005 that Plaintiff had been admitted to the hospital and "diagnosed with possible viral meningitis/encephalitis." Tr. 205

On March 9, 2005, an MRI of Plaintiff's cervical spine showed no level of disc herniation or spinal stenosis. Tr. 165. In April 2005, Plaintiff reported increased pain after a long car trip to North Carolina. Dr. Richardson's examination revealed positive straight-leg raise testing on the left, 4+ or 5/5 muscle strength in all groups, and lumbar paraspinal tenderness. There were no long tract signs and no sensory deficits. Tr. 206. On May 24, 2005, Dr. Richardson wrote that Plaintiff's neck and low back pain symptoms were aggravated because Plaintiff had been caring for her elderly mother who had to be hospitalized. Tr. 207.

Plaintiff complained to Dr. Pappas of symptoms of depression including irritability, sleep disturbance, anhedonia, and easily losing her temper in June 2005. Dr. Pappas thought that Plaintiff was stressed out with handling her father's estate and her mother's terminal illness. He diagnosed Plaintiff with depression and prescribed Wellbutrin. Tr. 177. On June 20, 2005, Plaintiff complained of nausea from Lexapro (which was substituted for Wellbutrin). Dr. Pappas advised

Plaintiff to take a half a pill of Lexapro for five to seven days and then increase the dosage to a whole pill. On July 6, 2005, Plaintiff reported to Dr. Richardson that her back pain had subsided somewhat and she only had to take Percocet infrequently. He noted that Plaintiff was started on Lexapro, but she had been "unable to tolerate this as it caused significant [gastrointestinal] upset." Tr. 208.

In August 2005, Plaintiff reported to Dr. Richardson that she had repeated falls. Examination revealed some give way weakness of Plaintiff's left lower extremity and positive straight-leg raise testing on the left. Tr. 209. On August 25, 2005, an EMG and nerve conduction study, however, were normal with no evidence of lumbar radiculopathy or peripheral nerve damage. Tr. 210. On September 2, 2005, Dr. Richardson noted that Plaintiff was interested in returning to work part-time, which he thought was appropriate for her to attempt. Additionally, he noted that the EMG study revealed no evidence of nerve damage. Tr. 215. On November 2, 2005, Plaintiff reported increased pain symptoms after she had jury duty. Tr. 216.

An MRI of Plaintiff's lumbar spine on November 10, 2005 revealed moderate degenerative disc changes at L4-5 and L5-S1 with broad-based disc protrusions, impinging upon the transiting nerve roots; moderately severe bilateral foraminal stenosis at L5-S1, with entrapment of the exiting L5 nerve roots, particularly on the left; and mild degenerative disc bulges at one or two levels in the lower thoracic spine, without gross compressive sequelae. Tr. 217-218. On December 9, 2005, Dr. Richardson wrote that Plaintiff had undergone lumbar and cervical epidural injections with some improvement of her low back pain, but that her cervical pain continued. He recommended that Plaintiff start taking Lyrica. He opined that given her ongoing radicular pain complaints and her attempts at returning to work, he did not foresee her returning to any type of meaningful employment and he recommended she apply for disability. Tr. 219. On March 10, 2006, Dr. Richardson noted

5

diffuse lumbar paraspinal tenderness and spasm, but no motor or sensory deficits. He also wrote that Plaintiff had not filled her Lyrica prescription. Tr. 292.

On March 13, 2006, Dr. William Hopkins, a State agency physician, reviewed Plaintiff's medical records and opined that Plaintiff could perform a range of medium work. He noted Dr. Richardson's opinion (that Dr. Richardson did "not see [Plaintiff] returning to any meaningful type of employment"), but opined that it should be discounted as it was a finding of disability reserved for the Commissioner, the record indicated Plaintiff had no significant motor or sensory deficits, and Plaintiff's EMG/NCV testing was within normal limits. Tr. 220-227.

On March 15, 2006, Dr. Judith Von, a State agency psychologist, reviewed Plaintiff's medical records, and opined that Plaintiff did not have a medically determinable mental impairment. She noted that Plaintiff was taking Klonopin to help her rest, was not taking any medication for mental health issues, had not been seen by a mental health doctor or facility, had no restrictions on her activities of daily living, had the ability to handle money, and could take care of her personal hygiene needs independently. Tr. 228-240.

On April 25, 2006, Dr. Richardson wrote that Plaintiff's lumbar MRI scan revealed a mild disc bulging at L5-S1 with some peripheral distribution of the nerve roots. Plaintiff reported she stopped taking Lyrica due to lower extremity edema, and her extremity pain improved as the edema resolved. Tr. 289.

On May 24, 2006, Dr. Jeffrey Vidic, a State agency psychologist, opined that Plaintiff did not have a medically determinable mental impairment. Tr. 248-260. On June 8, 2006, Dr. Charles Fitts reviewed Plaintiff's medical records and opined that Plaintiff could perform a range of medium work.

6

He opined that Dr. Richardson's statement regarding Plaintiff not being able to return to meaningful employment was not supported by the medical evidence of record. Tr. 262-269.

On July 13, 2006 (a Thursday), Plaintiff returned to Dr. Pappas. She reported that she had a migraine since Friday. She said that medication (Oxycontin and Percocet) relieved the edge, but she still had neck pain. Plaintiff asked about "getting back on Lexapro because of having some depression and mood problems at home." Dr. Pappas diagnosed Plaintiff with migraines and depression, prescribed Cymbalta for depression, and noted that this medication might help with her neuropathic pain from disc disease. Tr. 305. On August 24, 2006, Plaintiff reported she only experienced one migraine headache since her last visit, and received relief in an hour from Darvocet. Dr. Pappas noted that Cymbalta was assisting Plaintiff with her anger issues. Tr. 306. On October 6, 2006, Plaintiff reported that she felt much better for the most part on Cymbalta. Tr. 307. Dr. Richardson noted on December 4, 2006 that Plaintiff had a significant fall injury which was causing her severe pain in her mid-back area. X-rays revealed disc space narrowing at multiple levels and some wedging of the vertebral body at T6 or T7. Tr. 288.

On September 19, 2007, Plaintiff complained of significant pain in her right hip area. Dr. Richardson's examination revealed that Plaintiff's hip range of motion was normal and she had minimal tenderness about the right greater trochanter. Ongoing diffuse cervical and lumbar paraspinal tenderness and spasm were noted. An MRI of Plaintiff's right hip was noted to be normal. Tr. 320. On November 19, 2007, Plaintiff complained of pain radiating from her neck to her right arm and hand. Tr. 318. A cervical MRI on November 20, 2007 showed evidence of multi-level cervical spondylosis with a low to moderate potential for nerve root compression. Tr. 316-317.

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council, which is discussed below. Tr. 324-358. In a letter dated January 27, 2004, Dr. Richardson wrote that Plaintiff was diagnosed with lumbar disc displacement and was only able to work a maximum of six hours a day and was restricted to lifting a maximum of twenty-five pounds, needed to alternate sitting and standing; and was limited to pushing, pulling, bending, or twisting. He also wrote that Plaintiff "was placed under this restriction on April 29, 2004 [a date three months after the letter was allegedly written]." Tr. 324. Plaintiff submitted copies of work excuse notes from Dr. Richardson for dates in 2004. Tr. 327, 329-334. Records from Trident Health System indicate that Plaintiff was hospitalized from December 30, 2004 to January 5, 2005 and was discharged with diagnoses of viral meningitis, abnormal electroencephalogram, and hypokalemia. Tr. 335-339.

Plaintiff underwent a neuropsychological evaluation on July 1, 3, 13, and 30 with Dr. Gordon Teichner, a clinical psychologist. Tr. 341-358. She complained she was on the verge of a nervous breakdown, reporting severe symptoms of depression starting around March 2009. Dr. Teichner diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and obsessive compulsive disorder. He made numerous recommendations including that Plaintiff be immediately hospitalized based on her psychological status and that she undergo individualized cognitive-behavioral psychological therapy. Dr. Teichner opined that it was probable that Plaintiff was not capable of meaningful employment and that he supported Plaintiff's disability claim. Tr. 341-358.

## HEARING TESTIMONY

Plaintiff testified she became disabled in December 2004 when she was laid off from her job. Tr. 24. She said she would have quit if she had not been laid off because she had planned to tell her employer in December or the first of January that she could only work four to six hours a day. She

also stated she later planned on telling her employer that her hours were going to be dropped to zero to four each day per Dr. Richardson. Tr. 40. Plaintiff stated that in December 2004 she became extremely ill, was hospitalized for a week with meningitis, and it "about killed" her. Tr. 24. She claims that meningitis caused memory loss for about four months and the disease also weakened her immune system. Tr. 25. Plaintiff testified she continued to have long-term memory loss. Tr. 37. She reported that she started having migraine headaches after having meningitis. Tr. 27. Plaintiff stated that pain radiated down her arm. Tr. 28. Plaintiff testified she had two or three headaches a month, and her medication helped relieve her symptoms. Tr. 42. She also complained of lower back and hip pain. Tr. 29. Plaintiff stated she fell two or three times a month. Tr. 29-30. She said surgery was not an option. Tr. 38.

Plaintiff testified she could lift about twenty pounds, sit for thirty minutes at a time, and stand for thirty minutes at a time. Tr. 31, 33. She said she could clean counters, do some cooking, wash some dishes, do laundry with help, and shop for groceries. Tr. 32. Plaintiff also said she went out to eat occasionally and visited with a friend. Tr. 33.

## DISCUSSION

Plaintiff alleges: (1) the ALJ erred at step two[2] in finding that her documented meningitis was unsubstantiated and determining that her migraine headaches were non-severe; (2) the ALJ erred in discounting the opinion of her treating physician; and (3) the Appeals Council erred in failing to

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. Id.

9

articulate why the new evidence did not warrant review. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[3] and free of harmful legal error.

A.     Severe Impairments

Plaintiff alleges that the ALJ erred in finding Plaintiff's meningitis was unsubstantiated and in finding that her migraine headaches were not a "severe" impairment. The Commissioner contends that the ALJ reasonably determined meningitis was not a severe impairment as there was no clinical evidence before the ALJ supporting Plaintiff's allegations concerning meningitis. Further, the Commissioner argues there is not a reasonable possibility that the new evidence presented to the Appeals Council (record of Plaintiff's hospitalization for approximately six days for meningitis) would have changed the outcome because there is no indication this impairment lasted for at least twelve consecutive months. The Commissioner argues that the ALJ reasonably determined that Plaintiff's headaches were not a severe impairment. Finally, the Commissioner contends any error is harmless as Plaintiff has not shown any additional limitations caused by her meningitis or headaches that should have been included in the RFC found by the ALJ.

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one

---

[3]Substantial evidence is:
>evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

10

that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. § 404.1508.

The ALJ's determination that Plaintiff's meningitis was not a severe impairment is supported by substantial evidence. In the record before the ALJ, the only evidence concerning meningitis is a January 2005 treatment record from Dr. Pappas (in which he wrote that Plaintiff reported she had been in the hospital with viral meningitis and he was trying to find the final hospital report), and Dr. Richardson's January 2005 treatment record (in which he states that Plaintiff reported she had been admitted to the hospital and diagnosed with possible viral meningitis/encephalitis). As noted by the ALJ, there was no further mention of this condition. Although Plaintiff submitted a copy of her hospital records to the Appeals Council which show she was hospitalized for approximately a week with meningitis, there is no indication this disease lasted for a period of at least twelve months.

The ALJ's determination that Plaintiff's migraine headaches were not a severe impairment is supported by substantial evidence. The ALJ found this impairment was controlled with medication. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986). In July 2006, Plaintiff told Dr. Pappas that her medication relieved her headaches somewhat, but she still had neck pain. Tr. 305. In August 2006, she reported her medication resolved her headache in about one hour. Tr. 306. Plaintiff told Dr. Pappas in October 2006 that her headache was controlled by medication.

Examination showed she was in no severe distress. Tr. 307. In January 2007, Plaintiff told Dr. Pappas that her headache had resolved with an injection at the emergency room. Tr. 308. Although Plaintiff may have had a period of time when her migraines caused more severe limitations, the medical records fail to show that this continued for at least twelve months. At the hearing, Plaintiff testified her medication took the headache away within thirty minutes and she had only had a time or two when the medication did not work because she took it too late. Tr. 42.

Additionally, any error in not finding that Plaintiff's meningitis and migraine headaches were not severe impairments is harmless. Plaintiff has not pointed to any evidence in the record which would suggest that her meningitis or headaches resulted in functional limitations in excess of the limitations found by the ALJ.[4] Plaintiff's claim that her headaches prevent her from working rests on her subjective complaints. She, however, has not challenged the ALJ's credibility determination.[5]

B.     Treating Physician

Plaintiff alleges that the ALJ erred in giving limited weight to Dr. Richardson's opinion that her extremely limited sitting/standing tolerance precluded meaningful employment. She argues that the ALJ erred because he did not apply the proper hierarchical factors; failed to take into account the longstanding treatment of Plaintiff; failed to take into account the MRIs, x-rays, physical

---

[4] It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987).

[5] The ALJ discounted Plaintiff's credibility as her allegations were inconsistent with medical evidence of record, Plaintiff's reports to her physicians, the treatment sought and received, and her activities of daily living (which included cooking, doing dishes, doing laundry on good days, grocery shopping, going out to eat with her husband, watching television, playing with her dogs, caring for her personal needs, driving, paying bills, crocheting, doing cross-stitch, doing word puzzles, talking on the telephone daily, visiting a friend every other month, going on a trip to North Carolina, and staying with her mother while her mother was hospitalized). He also noted that Plaintiff was not entirely compliant in taking her prescribed medications. See Tr. 15-18.

examinations, and epidural steroid injections on record; failed to consider that Dr. Richardson limited Plaintiff to part-time employment in 2004; and failed to take into account that Dr. Richardson kept Plaintiff out of work a minimum of eleven times during 2004 because of the severity of her condition. The Commissioner argues that the ALJ reasonably assigned little weight to Dr. Richardson's opinion.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Here, the ALJ's decision to discount Dr. Richardson's opinion is supported by substantial evidence and correct under controlling law. The ALJ specifically stated he gave limited weight to Dr. Richardson's undated letter (opining Plaintiff had extremely limited sitting and standing tolerance and he did not foresee her returning to any type of meaningful employment) because this opinion is one clearly reserved to the Commissioner. Tr. 18. Such a conclusory opinion is not controlling since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

The ALJ also discounted this opinion because Dr. Richardson's treatment notes did not include any clinical findings which would support such an assessment. Tr. 18. Contrary to Plaintiff's argument, the ALJ discussed Dr. Richardson's findings during the relevant time period as well as the result of imaging and nerve conduction studies. As noted by the ALJ, Dr. Richardson's examinations showed no motor or sensory deficits. See Tr. 16-17. The ALJ also noted that the records did not show any restrictions placed on Plaintiff's activities. There is no indication that Plaintiff's other examining or treating physicians (including Dr. Pappas) placed any restrictions on Plaintiff's ability to work. Additionally, the ALJ's decision is supported by the findings of the State agency physicians to which the ALJ gave some weight (Tr. 18). See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding

the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Plaintiff cites to pages 215 and 270 of the transcript to assert that Dr. Richardson restricted her to part-time employment in 2004. Page 215 is a note from September 2005 in which Dr. Richardson merely opined that he thought it would be appropriate for Plaintiff to attempt to return to work part-time. Tr. 215. Page 270 is the undated note from Dr. Richardson discussed above. Tr. 270. The record indicates that Dr. Richardson recommended that Plaintiff reduce her work hours to no more than six hours per day on April 29, 2004. There is, however, no indication as to the length of this recommendation. Tr. 298. Further, this recommendation was not made during the relevant time period. MRI evidence from this period does not support such a recommendation. As discussed above, an MRI of Plaintiff's lumbar spine on February 4, 2004 was unremarkable other than a "mild" and "non-compressive" annular bulge at L5-S1. Tr. 161. Cervical spine MRI in March 2004 revealed only mild degenerative changes and mostly mild stenosis. Tr. 163. A March 2005 cervical spine MRI showed no level of disc herniation or spinal stenosis. Tr. 165. The work excuses from 2004 were not before the ALJ. Further, these notes pertain to a period prior to Plaintiff's alleged onset date. Plaintiff appears to be asking the Court to re-weigh the evidence and substitute its judgment for that of the ALJ, which it cannot do. See Shively, 739 F.2d at 990 (the Commissioner, and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence could support a conclusion that is inconsistent with that of the Commissioner); Craig, 76 F.3d at 589 (role of the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].").

C.   Appeals Council

Plaintiff argues that the Commissioner's final decision is not based on substantial evidence because the Appeals Council failed to articulate why the new evidence submitted did not warrant review of the ALJ's decision. Specifically, she argues that the Appeals Council erred in not discussing why it did not grant review in light of Dr. Teichner's July 2009 report. Plaintiff asserts that Dr. Teichner's report related back to the time relevant to the ALJ's decision and could possibly have changed the outcome of the ALJ's decision. The Commissioner contends that the Appeals Council's notice is not a final decision and is thus not subject to final review, recent Fourth Circuit decisions reject the idea that the Appeals Council must articulate its own assessment of additional evidence or that such articulation is necessary to allow courts to conduct meaningful review of the additional evidence, and the evidence would not have changed the ALJ's decision.

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

There is a split in authority regarding whether the Appeals Council is required to provide reasons for finding additional evidence would not change the ALJ's decision. Compare Freeman v. Halter, No. 00-2471, 2001 WL 847978, at *2 (4th Cir. July 27, 2001)(concluding that the Appeals Council need not list detailed reasons for its rejection of additional evidence) and Hollar v.

16

Commissioner of the Soc. Sec. Admin., No. 98-2748, 1999 WL 753999, at *1 (4th Cir. Sept. 23, 1999)(detailed explanation not required) with Harmon v. Apfel, 103 F.Supp.2d 869 (D.S.C. 2000)(Appeals Council must articulate its reason for rejecting new evidence such that a reviewing court may understand the weight the Commissioner attributed to it) and Wheelock v. Astrue, No. 9:07-3786-HMH-BM, 2009 WL 250031 (D.S.C. Feb. 3, 2009)(remanding case to the ALJ "to articulate his assessment of the new and material evidence presented by [the plaintiff] so that this court may determine whether the ALJ's decision is supported by substantial evidence).

Here, however, any failure of the Appeals Council to articulate its reasons for rejecting Dr. Teichner's report and opinion is harmless error. Dr. Teichner did not examine Plaintiff for the first time until July 1, 2009, more than a year after the ALJ's decision (April 2008). Thus, Plaintiff cannot show that Dr. Teichner's report relates to the relevant time period.

In her Reply Brief, Plaintiff argues that Dr. Teichner's opinion is material because she was treated for depression beginning in 2005 and Dr. Teichner opined that Plaintiff had symptoms consistent with major depressive episode and generalized anxiety before he examined her. There is no indication, however, that Plaintiff had a severe mental impairment during the relevant time period. Significantly, Plaintiff did not even allege depression or any mental impairment in her disability application as a basis for finding her disabled. See Tr. 112. Her medication list does not include any medications for depression. See Tr. 157. At the hearing before the ALJ, Plaintiff did not testify as to any depression. See Tr. 22-45. The only evidence of a mental disorder in the records before the ALJ consists of a diagnosis by Dr. Pappas of depression and prescription of an antidepressant in June 2005 (Tr. 175-176), an indication that Plaintiff was not taking her prescribed medication a month later because of side effects (see Tr. 208), Plaintiff's request approximately a year later that an

antidepressant medication be prescribed again (Tr. 305), and reported subsequent improvement in her symptoms (Tr. 307-308). There is no indication that Dr. Pappas or any of Plaintiff's treating or examining physicians noted any limitations on Plaintiff's ability to work due to any mental impairment during the relevant time period.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

August 10, 2011
Columbia, South Carolina